**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------------------X
ARDIANA NOKAJ, LORIK MEHMETAJ, KRISTO FOTO,
XHOVAN KOLA, *individually and on behalf of the collective and class members,*

|  |  |
|---|---|
| | Case No.: |
| **Plaintiffs,** | |
| | **COLLECTIVE & CLASS ACTION COMPLAINT** |
| -against- | **JURY TRIAL DEMANDED** |

PAPPAS NEW YORK, PAPPAS OG, LLC, PAPPAS TAVERNA,
DREAM HOSPITALITY GROUP, LLC, ABC CORPORATIONS 1-3,
GEORGE KARAVIAS, JOSEPH LICUL, DANIELLE JIMENEZ
MARINE, and JOHN and JANE Does 1 -4, *individually and personally*,

**Defendants.**
------------------------------------------------------------------------------------X

Plaintiffs ARDIANA NOKAJ, LORIK MEHMETAJ, KRISTO FOTO, and XHOVAN KOLA, ("collectively "Plaintiffs") individually and as and for all similarly situated employees, by and through their attorneys, Emre Polat, PLLC, allege  allege against PAPPAS NEW YORK, PAPPAS OG, LLC, PAPPAS TAVERNA, DREAM HOSPITALITY GROUP, LLC, ABC CORPORATIONS 1-3 (collectively "Corporate Defendants"), GEORGE KARAVIAS, JOSEPH LICUL, DANIELLE JIMENEZ MARINE, and JOHN and JANE Does 1 -4 (collectively "Individual Defendants"), upon information and belief, as follows:

**NATURE OF THE CLAIMS**

1.    This case arises out of the Defendants' willful and systemic wage payment schemes and violations, resulting in deliberate underpayment of wages to Plaintiffs and the Collective and Class members in violation of the federal and New York State wage laws.

1

2.      Plaintiffs bring this action to recover unpaid wages owed to them and similarly situated employees pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA") and the New York Labor Law ("NYLL") §§ 650 *et seq*.

3.      Plaintiffs are former employees of Defendants' restaurant, Pappas New York, located at 103 MacDougal Street New York, New York 10012.

4.      Plaintiffs were all non-exempt employees providing non-exempt services such as taking customer orders, preparing drinks, cleaning, serving, and cooking.

5.      Plaintiffs represent a collective members and class of employees of defendants as servers, cooks, bartenders and barbacks.

6.      Defendants exerted significant and substantial control over the performance of duties of Plaintiffs such that they were "employees" of Defendants.

7.      Plaintiffs alleges that Defendants willfully violated the FLSA and NYLL by (i) failing to pay the minimum wage, (ii) failing to pay overtime premium pay; (iii) failing to provide meal breaks (iv) failing to pay spread-of-hour pay (v) failing to provide the Notice of Acknowledgement of Payrate and Payday under N.Y. Lab. Law §195.1, (vi) failing to provide an accurate wage statement under N.Y. Lab. Law §195.3, (vii) failing to timely pay Plaintiffs and similarly situated employees in violation of New York Labor Law §191 and §198 and (vii) improperly retaining gratuities meant for the employees.

8.      Plaintiffs alleges pursuant to the FLSA and NYLL that they and similarly situated employees are each entitled to recover from Defendants: (1) unpaid overtime; (2) unpaid minimum wage; (3) unpaid spread-of-hours pay; (4) penalties for wage notice violations; (5) misappropriated tips; (6) liquidated damages; (7) interest; (8) 100% of the wages paid in violation of NYLL §191 & §198 and (9) attorneys' fees and costs.

9.      Plaintiffs brings FLSA claims on behalf of themselves and all other similarly situated employees who worked for the Defendants at any time during the three (3) years prior to the commencement of this action ("Collective Action Members").

10.     Plaintiffs bring NYLL claims on behalf of themselves and all other similarly situated employees who worked for the Defendants at any time during the six (6) years prior to the commencement of this action ("Class" or "Class Action Members").

11.     In addition, Defendants filed fraudulent tax withholdings to the Internal Revenue Service ("IRS") for Plaintiffs and similarly situated employees without withholding proper Federal and State tax, social security, FICA, and employee withholding deductions and/or disbursing the proper tax withholdings. Accordingly, Plaintiffs brings this action pursuant to Internal Revenue Code 26 U.S.C. § 7434 for relief, damages, fees and costs in this matter because Defendants willfully and fraudulently filed tax information forms with the IRS.

12.     Plaintiffs also bring claims pursuant to the New York State Executive Law § 296 and New York City Administrative Code ("NYCHRL") for discrimination, hostile work environment, and retaliation, upon their termination by Defendants on December 17, 2023.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 because this action involves federal questions regarding the deprivation of Plaintiffs' rights under the FLSA.  Pursuant to 28 U.S.C. § 1367(a), the Court has supplemental jurisdiction over Plaintiffs' related claims under New York state law.

14.     Pursuant to 28 U.S.C. § 1391(b), venue is proper in this district because a substantial part of the events or omissions giving rise to this action occurred in this district.

15.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

### Plaintiffs

16.    Plaintiff ARDIANA NOKAJ is an individual residing in Queens County, New York.

17.    Plaintiff LORIK MEHMETAJ is an individual residing in Bronx County, New York.

18.    Plaintiff KRISTO FOTO is an individual residing in Bronx County, New York.

19.    Plaintiff XHOVAN KOLA is an individual residing in Kings County, New York.

20.    At all times relevant, Plaintiffs were employed by Defendants as non-exempt employees.

21.    Plaintiffs are former employees of Pappas New York, owned and operated by Corporate Defendants and Individual Defendants.

22.    Defendants exerted significant and substantial control over the performance of duties of the Plaintiffs such that Plaintiffs are "employees" of the Defendants.

### Defendants

23.    Defendant PAPPAS NEW YORK is a domestic corporation existing under the laws of New York.

24.    At all times relevant to this action, Defendant PAPPAS NEW YORK has been a business or enterprise engaged in interstate commerce within the meaning of the FLSA in that it has had employees engaged in commerce or in the production of goods for commerce, and handles, sells, or otherwise works on goods or materials that have been moved in or produced for commerce by any person and had an annual gross volume of sales not less than $500,000.00.

25.    At all relevant times, Defendant PAPPAS NEW YORK is an "employer" and is an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and the regulations thereunder.

26.    Defendant PAPPAS OG, LLC is a domestic corporation existing under the laws of New York.

27.    At all times relevant to this action, Defendant PAPPAS OG, LLC has been a business or enterprise engaged in interstate commerce within the meaning of the FLSA in that it has had

employees engaged in commerce or in the production of goods for commerce, and handles, sells, or otherwise works on goods or materials that have been moved in or produced for commerce by any person and had an annual gross volume of sales not less than $500,000.00.

28. At all relevant times, Defendant PAPPAS OG, LLC is an "employer" and is an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and the regulations thereunder.

29. Defendant PAPPAS TAVERNA is a domestic corporation existing under the laws of New York.

30. At all times relevant to this action, Defendant PAPPAS TAVERNA has been a business or enterprise engaged in interstate commerce within the meaning of the FLSA in that it has had employees engaged in commerce or in the production of goods for commerce, and handles, sells, or otherwise works on goods or materials that have been moved in or produced for commerce by any person and had an annual gross volume of sales not less than $500,000.00.

31. Defendants PAPPAS NEW YORK, PAPPAS OG, LLC, and PAPPAS TAVERNA are collectively referred to herein as "Pappas".

32. At all relevant times, Defendant PAPPAS TAVERNA is an "employer" and is an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and the regulations thereunder.

33. Defendant DREAM HOSPITALITY GROUP, LLC is a domestic corporation existing under the laws of New York.

34. At all times relevant to this action, Defendant DREAM HOSPITALITY GROUP, LLC has been a business or enterprise engaged in interstate commerce within the meaning of the FLSA in that it has had employees engaged in commerce or in the production of goods for commerce, and handles, sells, or otherwise works on goods or materials that have been moved in or produced for commerce by any person and had an annual gross volume of sales not less than $500,000.00.

35.    At all relevant times, Defendant DREAM HOSPITALITY GROUP, LLC is an "employer" and is an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and the regulations thereunder.

36.    Defendants ABC CORPORATIONS 1-3 are unknown corporations which are owned and/or operated Defendants, which shall be determined and added through this litigation.

37.    At all times relevant to this action, ABC CORPORATIONS 1-3  have been a business or enterprise engaged in interstate commerce within the meaning of the FLSA in that it has had employees engaged in commerce or in the production of goods for commerce, and handles, sells, or otherwise works on goods or materials that have been moved in or produced for commerce by any person and had an annual gross volume of sales not less than $500,000.00.

38.    At all relevant times, Defendant ABC CORPORATIONS 1-3 are an "employer" and an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and the regulations thereunder.

39.    Upon information and belief, Defendant GEORGE KARAVIAS, was and is a resident of Richmond County, New York.

40.    Upon information and belief, Defendant JOSEPH LICUL, was and is a resident of Nassau County, New York.

41.    Upon information and belief, Defendant DANIELLE JIMENEZ MARINE, was and is a resident of New York County, New York.

42.    Defendants JOHN and JANE DOES 1-4 are unknown individuals who are owners, managers, members, and/or shareholders of Corporate Defendants whose identity shall be determined through litigation and added through this litigation.

43.    At all times herein, Defendants own and operate the restaurant "Pappas New York" located at 103 MacDougal Street New York, New York 10012.[1]

44.    At all times herein, Defendant DREAM HOSPITALITY GROUP, LLC ("Dream Hospitality") owns and operates various venues and restaurants in New York, including Bounce, Cola Club, Day Dream Brunch, Felt, Harbor, Musica, PHD, Whisper Room, Sei Less, Panda Harlem, and Pappas New York. [2]

45.    At all times relevant to this action, Defendant GEORGE KARAVIAS was and is an executive, director, member, shareholder, and owner of the Corporate Defendants.

46.    At all times relevant, Defendant GEORGE KARAVIAS holds himself out to be and is a Founder of Dream Hospitality and Pappas. [3]

47.    Defendant GEORGE KARAVIAS exercised control over the employment terms and conditions of Plaintiffs and exercised the power and authority to (i) fire and hire, (ii) determine the rate and method of pay, and (iii) otherwise affect the quality of employment of Plaintiffs.

48.    At all times, Plaintiffs could complain to Defendant GEORGE KARAVIAS directly regarding any of the terms of their employment, and Defendant GEORGE KARAVIAS would have the authority to affect any changes to the quality and terms of Plaintiffs' employment.

49.    Defendant GEORGE KARAVIAS exercised functional control over the business and financial operations of employees, including payments of wages, cash wages, recording hours, tax withholdings, and adhering to Federal and State regulations for employment practices and compensation of Pappas and Dream Hospitality.

---

[1] www.pappasnewyork.com

[2] https://www.dreamhospitalitygroup.com

[3] https://www.instagram.com/georgeknyc/?hl=en

50. At all relevant times, Defendant GEORGE KARAVIAS is an "employer" and is an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and the regulations thereunder.

51. At all relevant times, Defendant GEORGE KARAVIAS owned, operated, and controlled Pappas and Corporate Defendants' day-to-day operations and management and employed Plaintiffs.

52. At all times relevant to this action, Defendant JOSEPH LICUL was and is an executive, director, member, and owner of the Corporate Defendants.

53. Defendant JOSEPH LICUL exercised control over the employment terms and conditions of Plaintiffs and exercised the power and authority to (i) fire and hire, (ii) determine the rate and method of pay, and (iii) otherwise affect the quality of employment of Plaintiffs.

54. At all times, Plaintiffs could complain to Defendant JOSEPH LICUL directly regarding any of the terms of their employment, and Defendant JOSEPH LICUL would have the authority to affect any changes to the quality and terms of Plaintiffs' employment.

55. At all relevant times, Defendant JOSEPH LICUL is an "employer" and is an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and the regulations thereunder.

56. At all relevant times, Defendant JOSEPH LICUL owned, operated, and controlled Pappas and Corporate Defendants' day-to-day operations and management and employed Plaintiffs.

57. At all times relevant to this action, Defendant DANIELLE JIMENEZ MARINE was and is an executive, director, member, and owner of the Corporate Defendants.

58. Defendant DANIELLE JIMENEZ MARINE exercised control over the employment terms and conditions of Plaintiffs and exercised the power and authority to (i) fire and hire, (ii) determine the rate and method of pay, and (iii) otherwise affect the quality of employment of Plaintiffs.

59. At all times, Plaintiffs could complain to Defendant DANIELLE JIMENEZ MARINE directly regarding any of the terms of their employment, and Defendant DANIELLE JIMENEZ MARINE would have the authority to affect any changes to the quality and terms of Plaintiffs' employment.

60.    At all relevant times, Defendant DANIELLE JIMENEZ MARINE is an "employer" and is an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and the regulations thereunder.

61.    At all relevant times, Defendant DANIELLE JIMENEZ MARINE owned, operated, and controlled Pappas and Corporate Defendants' day-to-day operations and management and employed Plaintiffs.

62.    At all times relevant to this action, Defendant JOHN and JANE DOES 1-4 are individuals who are or were an executive, director, member, shareholder, and owner of the Corporate Defendants.

63.    Defendants JOHN and JANE DOES 1-4 exercised control over the employment terms and conditions of Plaintiffs and exercised the power and authority to (i) fire and hire, (ii) determine the rate and method of pay, and (iii) otherwise affect the quality of employment of Plaintiffs.

64.    At all times, Plaintiffs could complain to Defendants JOHN and JANE DOES 1-4 directly regarding any of the terms of their employment, and Defendants JOHN and JANE DOES 1-4 would have the authority to affect any changes to the quality and terms of Plaintiffs' employment.

65.    Defendants JOHN and JANE DOES 1-4 exercised functional control over the business and financial operations of employees, including payments of wages, cash wages, recording hours, tax withholdings, and adhering to Federal and State regulations for employment practices and compensation of Pappas and Dream Hospitality.

66.    At all relevant times, Defendants JOHN and JANE DOES 1-4 are an "employer" and an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and the regulations thereunder.

67.    At all relevant times, Defendants JOHN and JANE DOES 1-4 owned, operated, and controlled Pappas and Corporate Defendants' day-to-day operations and management and employed Plaintiffs.

68.     Individual Defendants, either directly or indirectly, have hired and fired Plaintiffs and other employees, controlled Plaintiffs' work schedule and employment conditions, determined their payment rate, and kept at least some records regarding Plaintiffs' employment.

69.     Individual Defendants owns operate or control several restaurants and venues in New York through the Corporate Defendants.

70.     The acts of the Corporate Defendants were authorized, directed or accomplished by Individual Defendants, by themselves or their agents, officers, employees, or representatives, while actively engaged in the management of Defendants' business, including implementing employment and wage practices.

71.     Each Defendant, either directly or indirectly, has hired and fired Plaintiffs and other employees, controlled the work schedule and employment conditions, determined payment rate, and kept at least some records regarding Plaintiffs' employment.

72.     At all relevant times, the Corporate Defendants had the same employment policies and practices at the respective restaurants as observed by Plaintiffs.

73.     Each Individual Defendant is personally liable for the conduct set forth herein.

## **STATEMENT OF FACTS**

### **Plaintiffs' Employment**

74.     Defendants own and operate Pappas New York, a Greek restaurant and lounge located at 103 MacDougal Street New York, New York 10012.

75.     Pappas offers Greek cuisine as well as live and recorded music.

76.     Plaintiffs were employed by Pappas starting on or about February 2023 in various positions including servers, cooks, bartenders, and barbacks.

77.     All Plaintiffs performed non-exempt services at the restaurant.

78.     On or about February 2023, Pappas was operating from Tuesdays through Sundays from 2pm

until 2am.

79.    While Plaintiffs were scheduled to work their shifts during the times Pappas was open for business, Plaintiffs worked considerable amount of time without being compensated for the time working prior to their shift and after their shift, preparing the restaurant to open and cleaning the restaurant once closed.

80.    Plaintiffs and similarly situated employees were not compensated at all for their training period with Defendants while working at Defendants' restaurant.

**Ardiana Nokaj**

81.    Plaintiff Nokaj was employed by Defendants as a bartender and commenced employment on or about May 2023.

82.    Plaintiff Nokaj was scheduled to work Tuesdays through Saturdays from 4pm to 2am and from 12:30am to 1:00am on Sundays.

83.    While Plaintiff Nokaj was directed by Defendants to clock out, Plaintiff Nokaj was routinely required to clean and close the bar after clocking out, often working until 2:30am-3am.

84.    At all times herein, Defendants did not compensate Plaintiff Nokaj at all during the initial period of employment with Defendants for "training".

85.    At all times herein, Defendants compensated Plaintiff Nokaj in cash from May 26, 2023 through August 18, 2023.

86.    At all times herein, Defendants failed to compensate Plaintiff Nokaj at the minimum wage and failed to compensate Plaintiff Nokaj with the overtime premium.

87.    At all times herein, Plaintiff Nokaj was compensated at an hourly rate of $10.00 per hour. While Defendants took advantage of the New York State tip credit, Defendants failed to properly compensate Plaintiff Nokaj at the proper wage.

88.    At all times herein, Plaintiff Nokaj did not receive any meal breaks and worked over 50 hours a

week.

89.    At all times herein, Plaintiff Nokaj was terminated by Defendants on December 17, 2023.

90.    At all times herein, Defendants compensated Plaintiff Nokaj late, often compensating every two to three weeks instead of weekly.

**Lorik Mehmetaj**

91.    Plaintiff Mehmetaj was employed by Defendants as a cook and commenced employment on or about September 20, 2023.

92.    Plaintiff Mehmetaj was scheduled to work from Wednesday through Sundays from 1pm to 1am.

93.    While Plaintiff Mehmetaj was directed by Defendants to clock out, Plaintiff Mehmetaj was routinely required to clean his station after clocking out, often working until 2:00am.

94.    At all times herein, Plaintiff Mehmetaj was not compensated at all by Defendants from September 20, 2023 through October 17, 2023 while in training. Despite performing substantial work for Defendants during this period, Defendants did not compensate Plaintiff and instead stated that he was "in training".

95.    At all times herein, Plaintiff Mehmetaj was compensated at an hourly rate of $25.00 per hour.

96.    At all times herein, Plaintiff Mehmetaj did not receive any meal breaks and worked over 60 hours a week without overtime premium compensation.

97.    At all times herein, Plaintiff Mehmetaj was terminated by Defendants on December 17, 2023.

98.    At all times herein, Defendants compensated Plaintiff Mehmetaj late, often compensating every two to three weeks instead of weekly.

**Kristo Foto**

99.    Plaintiff Foto was employed by Defendants as a server and commenced employment on or about February 17, 2023.

100.  Plaintiff Foto was scheduled to work at Defendants from Tuesday through Sunday from 3:00pm to 3:00am.

101.  While Plaintiff Foto was scheduled to work from 3:00pm to 3:00am, Plaintiff Foto was directed to clock in at 5:00pm although Plaintiff Foto arrived to the restaurant at the beginning of his shift to prepare the restaurant for service and clocked out at 1:30am while still cleaning the restaurant and stations until 3am.

102.  Plaintiff Foto was compensated at an hourly rate of $10.00 per hour.

103.  Plaintiff Foto was compensated in cash from February 17, 2023 through March 19, 2023 and May 29, 2023 through August 20, 2023.

104.  From February through March 20, 2023, Plaintiff Foto did not receive proper compensation and only received from Defendants what Defendants decided "was fair" to compensate.

105.  Plaintiff Foto was not compensated at all during his training at the restaurant while still working at the restaurant.

106.  At all times herein, Defendants compensated Plaintiff Foto late, often compensating every two to three weeks instead of weekly.

107.  At all times herein, Plaintiff Foto did not receive any meal breaks and worked over 50 hours a week without overtime premium compensation.

108.  Plaintiff Foto was terminated by Defendants on December 17, 2023.

**<u>Xhovan Kola</u>**

109.  Plaintiff Kola was employed by Defendants as a barback and commenced employment on or about May 15, 2023.

110.  Plaintiff Kola was scheduled to work at Defendants from Thursday through Sunday.

111.  Plaintiff Kola was scheduled to work from 4:00pm to 2:00am Thursday through Saturday and 1:30pm to 12:30am on Sundays.

112.   As a barback, Plaintiff Kola's duties consisted of stocking liquor for the bars in the restaurant along with drink garnishes, fruit, ice, bartending tools, and cleaning the bar.

113.   At all times herein, Plaintiff Kola was directed by Defendants to also bus tables and to make drinks and serve shots.

114.   While Plaintiff Kola was directed by Defendants to clock out, Plaintiff Kola was directed to continue working by busing tables, making drinks, and serving shots into the early morning hours of the restaurant's operation.

115.   Plaintiff Kola was compensated at an hourly rate of $10.00 per hour despite not providing any food or drink service for tips to customers.

116.   Plaintiff Kola was compensated by check for the first two weeks and was not compensated from May 31, 2023 through July 17, 2023.

117.   On or about July 17, 2023, upon complaining of not receiving any compensation, Plaintiff Kola was finally compensated his wages in cash, 6 weeks late.

118.   Plaintiff Kola was not compensated at all during his training at the restaurant while still working at the restaurant.

119.   At all times herein, Defendants compensated Plaintiff Kola late, often compensating every two to three weeks instead of weekly.

120.   At all times herein, Plaintiff Kola did not receive any meal breaks and worked over 45 hours a week without overtime premium compensation and below the minimum wage.

121.   Plaintiff Kola was terminated by Defendants on December 17, 2023.


**Defendants' Illegal Wage and Corporate Policies**

122.   Defendants paid Plaintiffs below the minimum wage.

123.   Defendants failed to compensate Plaintiffs and similarly situated employees wages at all for

certain periods during their employment and paid wages late in violation of NYLL §191 and §198.

124.    Despite the fact that Plaintiffs and similarly situated employees worked over forty (40) hours each week, Defendants did not pay them overtime premiums of one and one-half (1.5) their hourly rate.

125.    Plaintiffs and similarly situated employees were harmed by the corporate policies of Defendants, including failing to pay minimum wage for all hours worked, overtime premiums and spread-of-hour premiums and failing to provide wage statements and wage notices.

126.    Defendants did not provide Plaintiffs and similarly situated employees with proper wage notices at the time of hire or by February 1 of each year.

127.    Defendants failed to provide accurate wage statements to Plaintiffs and similarly situated employees which reflected, among other information, all hours worked, including overtime hours, the regular and overtime pay rate(s) during the pay period.

128.    Defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

**Defendants' Discrimination, Retaliation, and Termination of Plaintiffs Based on Their National Origin**

129.    New York City is among the most diverse cities in the world wherein millions of immigrants have settled, built homes, communities, and labored in some of the most exhaustive positions.

130.    To protect such individuals from disparate and discriminatory treatment, the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL") prohibits discrimination on the basis of an individual's nationality, alienage, or citizenship status.

131.    Plaintiffs were subject to discriminatory comments and threats based on their national origin and ultimately terminated on the same day after over years of exhaustive and dedicated service with unfair compensation.

132. Plaintiffs are of Albanian national origin. On or about December 17, 2023, Defendant DANIELLE JIMENEZ MARINE terminated all Albanians from Defendants' restaurant while retaining employees who were not Albanian.

## FLSA COLLECTIVE ACTION ALLEGATIONS

133. Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt tipped employees, including servers and waitstaff employed by the Defendants on or after the date that is three (3) years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

134. At all relevant times, Plaintiffs and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements, and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices and procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them proper wages, overtime premiums and spread-of-hour premiums. The claims of the Plaintiffs stated herein are essentially the same as those of the FLSA Collective Plaintiffs.

135. Each Plaintiff has spoken to other employees of Defendants and can confirm that Defendants wage policies and procedures are similar to theirs.

136. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail in English or any other language.

137. Under 29 U.S.C. § 206, Plaintiffs seeks to assert these allegations and claims as a collective action for:

> All persons whom Defendants employ and have employed since February 14, 2021 until entry of Judgment in this case (the "Collective Action Period"),were

performing work: 1) taking customer orders and serving to the public 2) working in the kitchen preparing and cooking food for service; and 3) servicing and working the bar preparing and serving liquor and drinks, who were non-exempt employees under the FLSA (the "Collective Action Members").

138.   Plaintiffs and the Collective Action Members are similarly situated on several legal and factual issues, including:

   a.   Defendants employed the Collective Action Members;

   b.   Collective Action Members performed similar duties;

   c.   Defendants failed to keep true and accurate records for all hours Plaintiffs and Collective Action Members worked;

   d.   Defendants willfully and recklessly violated the FLSA;

   e.   Defendants failed to pay the Collective Action Members minimum wages for hours worked each week and overtime compensation for hours worked in excess of 40 hours per workweek at the proper rate, violating the FLSA and the regulations promulgated thereunder;

   f.   Defendants should be enjoined from such violations of the FLSA in the future;

## RULE 23 CLASS ALLEGATIONS – NEW YORK

139.   Plaintiffs also bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein (the "Class Period").

140.   All said persons, including the Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class member are also determinable from the Defendants' records.  For purposes of

notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. Rule 23.

141. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendants; upon information and belief, there are in excess of twenty (20) Class Members in Defendants' restaurant operations in New York State.

142. The Plaintiffs' claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate action. All the Class Members were subject to the same corporate practices of Defendants, as alleged herein. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. The Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

143. The Plaintiffs are able to protect the interests of the Class and have no interests antagonistic to the Class fairly and adequately. The Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

144. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual Class Members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

145.    Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress to wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.

146.    The adjudication of the individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.

147.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for the Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions which they were not parties.  The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

148.    Defendants and other employers throughout the state violate the New York wage laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing those risks.

149.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

(a)  Whether Defendants employed the Plaintiffs and Class Members;

(b) What are and were the policies, practices, programs, procedures, protocols and plans of the Defendants regarding the types of work and labor for which the Defendants did not pay the Class Members properly;

(c) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Plaintiffs and Class Members for their work;

(d) Whether Defendants properly notified the Plaintiffs and Class Members of their hourly rate and overtime rate;

(e) Whether Defendants compensated Plaintiffs and Class Members spread-of-hours premium pay;

(f) Whether Defendants provided statutory meal breaks for Plaintiffs and Class members; and

(g) Whether Defendants paid the Plaintiffs and Class Members the proper minimum wage and overtime premium compensation;

(h) Whether Defendants, in violation of the New York State common law, shifted their burden under the federal tax laws to shoulder a portion of the payroll taxes on Plaintiffs' and Class Members' wages by paying them in cash;

(i) Whether Defendants' refusal to pay such compensation and unjust enrichment is in violation of the Labor Law and/or New York State common law.

## COUNT I
## <u>FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE</u>
### (Brought on Behalf of Plaintiffs and the Collective Action Members)

150. Plaintiffs, on behalf of themselves and the Collective Action Members, hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

151. By failing to pay minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq*. including 29 U.S.C. §§ 206 and 215(a)(2).

152.    Defendants' failure to pay minimum wages for all hours worked caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Therefore, Plaintiffs and the Collective Action Members are entitled to recover from Defendants their full unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## COUNT II
## FAIR LABOR STANDARDS ACT – UNPAID OVERTIME
### (Brought on Behalf of Plaintiffs and the Collective Action Members)

153.    Plaintiffs, on behalf of themselves and the Collective Action Members, hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

154.    By failing to pay overtime at a rate of not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants violated and continue to violate the FLSA, 29 U.S.C. §§201 *et. seq.,* including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

155.    Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Therefore, Plaintiffs and the Collective Action Members are entitled to recover from Defendants their overtime wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## COUNT III
## FAIR LABOR STANDARDS ACT – RETALIATION

156.    Plaintiffs hereby repeats and reallege the preceding paragraphs as though they were fully set forth herein.

157. Section 215(a)(3) of the FLSA states that it is unlawful for any person to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or caused to be instituted any proceeding under or related to this Act…"

158. During the course of Plaintiffs' employment with Defendants, Plaintiffs complained about being improperly paid and not receiving appropriate compensation for the hours worked or compensation at all.

159. Plaintiffs were retaliated against for complaining, ultimately resulting in Plaintiffs' termination.

160. As a result, Plaintiffs have been damaged in an amount to be determined at trial.

**COUNT IV**
**NEW YORK LABOR LAW – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiffs and Class Members)**

161. Plaintiffs, on behalf of themselves and the Class Members, hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

162. Defendants willfully violated Plaintiffs' and Class Members' rights by failing to pay minimum wage for all hours worked, in violation of the NYLL and the regulations promulgated thereunder.

163. Defendants' failure to pay minimum wage for all hours worked caused Plaintiffs and Class Members to suffer loss of wages and interest thereon. Therefore, Plaintiffs and Class Members are entitled to recover from Defendants their full unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§663(1) *et seq.*

**COUNT V**
**NEW YORK LABOR LAW – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiffs and Class Members)**

164. Plaintiffs, on behalf of themselves and the Class Members, hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

165.    Defendants willfully violated Plaintiffs' and Class Members rights by failing to pay overtime at a rate of not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours each week, in violation of the NYLL and the regulations promulgated thereunder.

166.    Defendants' failure to pay overtime caused Plaintiffs and Class Members to suffer loss of wages and interest thereon. Therefore, Plaintiffs and Class Members are entitled to recover from Defendants their overtime wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§663(1) *et seq.*

**COUNT VI**
**NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS PREMIUMS**
**(Brought on Behalf of Plaintiffs and Class Members)**

167.    Plaintiffs, on behalf of themselves and the Class Members, hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

168.    Defendants willfully violated Plaintiffs' and Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where Plaintiffs and worked either a split shift or more than ten (10) hours per day, in violation of NYLL §§650 *et. seq.,* and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs, tit. 12, §§137*1.7(2010), 146-1.6(2012).

169.    Defendants' failure to pay spread-of-hours compensation caused Plaintiffs and Class Members to suffer loss of wages and interest thereon. Plaintiffs and Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action.

## COUNT VII
## <u>NEW YORK LABOR LAW – MISAPPROPRIATED GRATUITIES</u>
### (Brought on Behalf of Plaintiffs and Class Members)

170. Plaintiffs, on behalf of themselves and the Class Members, hereby repeat and reallege the preceding paragraphs as though they were fully set forth herein.

171. Section 196-d of the New York Labor Law provides that "[n]o employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee."

172. Defendants willfully violated Plaintiffs' and Class Members rights by retaining a portion of the gratuities left for the Plaintiffs and Class Members by the customers of Defendants.

173. Moreover, on certain nights, Defendant GEORGE KARAVIAS would direct other non-employees of Defendants' other restaurants and venues to participate in Defendants' tips for "bottle service" at the Pappas venue. By way of example, Defendant GEORGE KARAVIAS would direct non-employee "bottle girls" to Pappas New York and would allow those non-employees to participate in the tips that Pappas New York employees worked for.

174. Defendants' unlawful retention of gratuities caused Plaintiffs and Class Members to suffer the loss of wages and interest thereon. Plaintiffs and Class Members are entitled to recover from Defendants their unpaid gratuities, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action.


## COUNT VIII
## <u>NEW YORK LABOR LAW – RETALIATION</u>

175. Plaintiffs hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

176. During the course of Plaintiffs employment, Plaintiffs complained to Defendants regarding being

improperly compensated and at times, not compensated at all, as required under the NYLL.

177.    Defendants discharged Plaintiffs and terminated their employment in violation of NYLL § 215.

178.    Defendants' termination of Plaintiffs' employment caused Plaintiffs to suffer losses of wages and interest thereon.

**COUNT IX**
**NEW YORK LABOR LAW - §191 – UNTIMELY WAGE PAYMENTS**

179.    Plaintiffs hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

180.    New York Labor Law §191 provides that: A manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned.

181.    Employers that violate the pay frequency law must pay the full amount of unpaid wages and may be liable for liquidated damages equal to 100% of untimely-paid wages, as well as interest, costs, and attorneys' fees.

182.    Defendants violated New York Labor Law §191 by failing to pay Plaintiffs timely for the hours Plaintiffs worked during the week in compliance with New York Labor Law §191.

183.    Defendants are liable to Plaintiffs for liquidated damages, interest, costs, and attorney's fees for all periods in which Defendants paid wages late to Plaintiffs in violation of New York Labor Law §191.

184.    Plaintiffs are entitled to liquidated damages, costs, interest, and attorneys' fees.

**COUNT X**
**NEW YORK LABOR LAW - §198 – NONPAYMENT OF WAGES**

185.    Plaintiffs realleges the preceding paragraphs as though they were fully set forth herein.

186.    At all times herein, Defendants failed to compensate Plaintiffs for training periods in which Plaintiffs worked weeks without compensation.

187.   Defendants have willfully violated New York Labor Law §198 by entirely failing to pay Plaintiffs wages for work provided by Plaintiffs at Defendants' restaurant during training weeks.

188.   Plaintiffs are entitled to their full wages, liquidated damages, costs, interest, and attorneys' fees.

**COUNT XI**
**CIVIL DAMAGES FOR FRAUDULENT FILING OF INFORMATION RETURNS**
**UNDER 26 U.S.C. §7434(a).**

189.   Plaintiff, on behalf of himself and the Collective/Class Members, hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

190.   By failing to provide Plaintiff and the Collective/Class Members with accurate IRS Forms for all of the tax years during which they were employed by Defendants, and failing to properly record, account for, and report to the IRS all monies actually earned and paid them for all of the work Plaintiff and the Collective/Class Members performed during the course of their employment with the Defendants, and failing to properly report correct amounts on IRS forms as monies withheld, Defendants filed fraudulent information returns with the IRS, in violation of 26 U.S.C. §7434.

191.   Under the Internal Revenue Code, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a).

**COUNT XII**
**DISCRIMINATION IN VIOLATION OF**
**NEW YORK STATE HUMAN RIGHTS LAW**

192.   Plaintiffs hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

193.   As a result of Defendants' discrimination, Plaintiffs have been to be deprived of equal treatment, including but not limited to: equal pay for commensurate work; equal opportunities for promotion, advancement, increased compensation, and continued employment; and standards of

conduct, because of their national origin.

194.   The aforesaid discriminatory acts by Defendants, its officers, directors, supervisors, managers and/or employees perpetrated against Plaintiffs because of their national origin violated Plaintiffs' rights under New York State Human Rights Law – Executive Law Article 15 Section 290 *et seq*.

195.   As a consequence of the foregoing conduct by Defendants, Plaintiffs have sustained and continue to sustain conscious pain and suffering, physical injury, great mental distress, shock, fright and humiliation. In addition, Plaintiffs have incurred and continue to incur monetary economic loss as they were subjected to adverse employment action.

196.   That as a direct result of the foregoing, Plaintiffs have been damaged in an amount which exceeds the jurisdictional limits of lower Courts.

**COUNT XIII**
**RETALIATION IN VIOLATION OF**
**NEW YORK STATE HUMAN RIGHTS LAW**

197.   Plaintiffs hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

198.   New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed practices forbidden under this article."

199.   The aforesaid acts of intentional retaliation against Plaintiffs by Defendants, its officers, directors, supervisors, managers and/or employees violated Plaintiffs' rights provided under New York State Human Rights Law – Executive Law Section 290 *et. seq.*

200.   As a consequence of the foregoing conduct by Defendants, Plaintiffs have sustained and continues to sustain conscious pain and suffering, physical injury, great mental distress, shock,

fright and humiliation. In addition, Plaintiffs have incurred and continue to incur monetary economic loss as they were subjected to adverse employment action.

201. That as a direct result of the foregoing, Plaintiffs have been damaged in an amount which exceeds the jurisdictional limits of lower Courts.

## COUNT XIV
## DISCRIMINATION IN VIOLATION OF
## NEW YORK CITY HUMAN RIGHTS LAW

202. Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

203. Defendants have discriminated against Plaintiffs in violation of New York City Administrative Code § 8-101 *et seq.*, by subjecting Plaintiffs to discriminatory treatment on the basis of their national origin.

204. Defendants have discriminated against Plaintiffs by treating them differently from and less preferably than similarly situated employees and by subjecting Plaintiffs to discriminatory termination and other forms of discrimination, in violation of the New York City Human Rights Law.

205. As a direct result of Defendants' conduct alleged in this complaint, Plaintiffs have suffered and continue to suffer harm, including, but not limited to lost earnings, lost benefits, lost future employment opportunities, and other financial loss, the precise amount of which will be determined according to proof at the time of trial.

206. As a further and direct result of Defendants' conduct alleged in this complaint, Plaintiffs have suffered and continue to suffer emotional distress and other non-economic damage, including, but not limited to worry, anxiety, and other symptoms of emotional distress, the precise amount and extent of which will be determined according to proof at the time of trial.

## COUNT XV
## RETALIATION IN VIOLATION OF
## NEW YORK CITY HUMAN RIGHTS LAW

207. Plaintiffs hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

208. The New York City Administrative Code Title 8, § 8-107(1) (e) provides that it shall be an unlawful retaliatory practice: "For an employer… to discharge… or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter…"

209. The aforesaid acts of intentional retaliation against Plaintiffs by Defendants, its officers, directors, supervisors, managers and/or employees, including Defendant DANIELLE JIMINEZ MARINE and GEORGE KARAVIAS violated Plaintiffs' rights provided under New York City Human Rights Law – Title 8 ("NYCHRL"), *et. seq.*

210. As a consequence of the foregoing conduct by Defendants, Plaintiffs have sustained and continue to sustain conscious pain and suffering, physical injury, great mental distress, shock, fright, and humiliation. In addition, Plaintiffs have incurred and continue to incur monetary economic loss as they were subjected to adverse employment action, including the termination of employment.

211. That as a direct result of the foregoing misconduct of Defendants, Plaintiffs are entitled to compensatory damages and punitive damages in the sum prescribed by NYC Human Rights Law Title 8 *et. seq.* as well as costs of this litigation and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court grant the following relief:

A. A declaratory judgment that practices complained of herein are unlawful under the FLSA and NYLL;

B.  An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

C.  An award of compensatory damages as a result of Defendants' failure to pay minimum wage and overtime compensation pursuant to FLSA and the NYLL and supporting regulations;

D.  An award of liquidated damages for non-payment of minimum wages and overtime compensation under FLSA and NYLL and supporting regulations;

E.  An award of pre-judgment and post-judgment interest;

F.  Declaring that the Defendants engaged in unlawful employment practices prohibited by the New York State Executive Law § 296 et seq., and awarding Plaintiffs a recovery for damages sustained;

G.  Declaring that Defendants engaged in unlawful employment practices prohibited by the New York City Administrative Code § 8-101 *et seq.*, et seq., and awarding Plaintiffs a recovery for damages sustained;

H.  Awarding Plaintiff compensatory damages for their mental and emotional injuries in an amount that exceeds the jurisdictional limit of all lower courts;

I.  Awarding Plaintiff punitive damages;

J.  An award of costs and expenses of this action together with reasonable attorneys' and expert fees;

K.  An award of damages resulting from additional tax debt and additional time and expenses associated with any necessary tax correction; and

L.  Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all questions of fact the

Complaint raises.

Dated: February 14, 2024
      New York, New York

                                       **EMRE POLAT, PLLC**
                                       EMPLOYMENT ATTORNEYS

                                       /s/ *Emre Polat*
                                       _____
                                       Emre Polat, Esq. (EP6063)
                                       45 Broadway, Suite 1420
                                       New York, New York 10006
                                       (212) 480-4500
                                       *Attorneys for Plaintiff*